**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

SUSAN NEELY RUDITSKY,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

Case No. 2:20-cv-01285-DJA

**ORDER**

Before the Court is Plaintiff Susan Ruditsky's motion for reversal and/or remand (ECF No. 17) and the Commissioner's cross motion to affirm and response (ECF Nos. 22-23). Plaintiff did not file a reply. Because the Court finds that the Administrative Law Judge's ("ALJ") determinations were supported by substantial evidence, it denies Plaintiff's motion for reversal and/or remand (ECF No. 17) and grants the Commissioner's countermotion to affirm (ECF No. 22). The Court finds these matters properly resolved without a hearing. LR 78-1.

I.      **Background.**

   *A. Procedural History.*

On November 2, 2016, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning July 1, 2016. (AR 13). Plaintiff's claim was denied first on June 6, 2017, and again after reconsideration on August 29, 2017. (AR 13). On June 5, 2019, the ALJ issued an unfavorable decision finding that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2016, through the date of his decision. (AR 24). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 11, 2020. (AR 5). On July 10, 2020, Plaintiff commenced this action for judicial review under 42 U.S.C. § 405(g). (ECF No. 1).

1          **B.  *The ALJ Decision.***

2          The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R.

3    §§ 404.1520 and 416.920.  (AR 15-24).  At step one, the ALJ found that Plaintiff has not engaged

4    in substantial gainful activity since July 1, 2016, the alleged onset date.  (AR 15).  At step two, the

5    ALJ found that Plaintiff has severe medically determinable impairments of left shoulder

6    osteoarthritis, degenerative disc disease of the lumbar and cervical spine, and status post lumbar

7    fusion.  (AR 15).  At step three, the ALJ found that Plaintiff does not have an impairment or

8    combination of impairments that meets or medically equals one of the listed impairments in 20

9    C.F.R. Part 404, Subpart P, Appendix 1.  (AR 18).  In making this finding, the ALJ specifically

10    considered Listings 1.02 and 1.04.  (AR 18).

11          Continuing with the sequential evaluation process, the ALJ found Plaintiff had a residual

12    functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following

13    limitations: (1) Plaintiff can occasionally lift/carry twenty pounds and frequently lift/carry ten

14    pounds; (2) Plaintiff can sit for six hours and stand/walk for six hours in an eight-hour workday;

15    (3) Plaintiff can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and

16    (4) Plaintiff cannot climb ladders, ropes, or scaffolds.  (AR 18).  At step four, the ALJ found that

17    the Plaintiff can perform past relevant work as a pharmacist and that this work does not require the

18    performance of work-related activities precluded by the claimant's residual functional capacity.

19    (AR 23).   The ALJ thus found Plaintiff not disabled and denied her application.  (AR 24).

20    **II.     Standard of review.**

21          The court reviews administrative decisions in social security disability benefits cases under

22    42 U.S.C. § 405(g).  *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002).  Section 405(g)

23    states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after

24    a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review

25    of such decision by a civil action…brought in the district court of the United States for the judicial

26    district in which the plaintiff resides."  The court may enter, "upon the pleadings and transcripts of

27    the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of

28    Social Security, with or without remanding the case for a rehearing."  *Id.*  The Ninth Circuit reviews

1   a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de*

2   *novo*.  *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

3         The Commissioner's findings of fact are conclusive if supported by substantial evidence.

4   *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005).  However, the

5   Commissioner's findings may be set aside if they are based on legal error or not supported by

6   substantial evidence.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006);

7   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The Ninth Circuit defines substantial

8   evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence

9   as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53

10  F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir.

11  2005).  In determining whether the Commissioner's findings are supported by substantial evidence,

12  the court "must review the administrative record as a whole, weighing both the evidence that

13  supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*,

14  157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

15        Under the substantial evidence test, findings must be upheld if supported by inferences

16  reasonably drawn from the record.  *Batson*, 359 F.3d at 1193.  When the evidence will support

17  more than one rational interpretation, the court must defer to the Commissioner's interpretation.

18  *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human*

19  *Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Consequently, the issue before the court is not whether

20  the Commissioner could reasonably have reached a different conclusion, but whether the final

21  decision is supported by substantial evidence.  *See Smolen*, 80 F.3d at 1279.  It is incumbent on the

22  ALJ to make specific findings so that the court does not speculate as to the basis of the findings

23  when determining if the Commissioner's decision is supported by substantial evidence.  *See Murray*

24  *v. Heckler*, 722 F.2d 499, 502-503 (9th Cir. 1983).  Mere cursory findings of fact without explicit

25  statements as to what portions of the evidence were accepted or rejected are not sufficient.  *Lewin*

26  *v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).  The ALJ's findings "should be as comprehensive

27  and analytical as feasible, and where appropriate, should include a statement of subordinate factual

28  foundations on which the ultimate factual conclusions are based." *Id.*

1    **III.    Disability evaluation process.**

2         The individual seeking disability benefits has the initial burden of proving disability.

3    *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995).  To meet this burden, the individual must

4    demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

5    determinable physical or mental impairment which can be expected . . . to last for a continuous

6    period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  More specifically, the individual

7    must provide "specific medical evidence" in support of her claim for disability.  20 C.F.R.

8    § 404.1514.  If the individual establishes an inability to perform her prior work, then the burden

9    shifts to the Commissioner to show that the individual can perform other substantial gainful work

10   that exists in the national economy.  *Reddick*, 157 F.3d at 721.

11        The ALJ follows a five-step sequential evaluation process in determining whether an

12   individual is disabled.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  If

13   at any step the ALJ determines that she can make a finding of disability or nondisability, a

14   determination will be made, and no further evaluation is required.  *See* 20 C.F.R. § 404.1520(a)(4);

15   *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Step one requires the ALJ to determine whether the

16   individual is engaged in substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(b).  SGA is

17   defined as work activity that is both substantial and gainful; it involves doing significant physical

18   or mental activities usually for pay or profit.  *Id.* § 404.1572(a)-(b).  If the individual is engaged in

19   SGA, then a finding of not disabled is made.  If the individual is not engaged in SGA, then the

20   analysis proceeds to step two.   Step two addresses whether the individual has a medically

21   determinable impairment that is severe or a combination of impairments that significantly limits

22   her from performing basic work activities.  *Id.* § 404.1520(c).  An impairment or combination of

23   impairments is not severe when medical and other evidence establishes only a slight abnormality

24   or a combination of slight abnormalities that would have no more than a minimal effect on the

25   individual's ability to work.  *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28.[1]  If

26

27   ───────────────

     [1]  SSRs constitute the SSA's official interpretation of the statute and regulations.  *See Bray v.*

28   *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R.
     § 402.35(b)(1).  They are entitled to some deference as long as they are consistent with the Social

the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. § 404.1520(f).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the

---

Security Act and regulations.  *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

## IV. Analysis and Findings.

### A. *The ALJ's RFC determination based on physical impairments is supported.*

The ALJ's RFC determination was supported by substantial evidence. Plaintiff faults the ALJ for failing to properly evaluate the medical evidence and for rejecting the opinions of Dr. Anuligo and Dr. Jurani in the ALJ's RFC determination at step four. (ECF No. 17, at 5-7). At step four of the sequential evaluation, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(a)(4)(iv). "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). "[A]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin*, 169 F.3d 595, 599-600 (9th Cir. 1999).

#### 1. The ALJ properly evaluated the medical evidence in addressing RFC.

Plaintiff does not demonstrate that the ALJ failed to properly evaluate the medical evidence in assessing her RFC. In determining a claimant's RFC, an ALJ must assess all the evidence

(including the claimant's and others' descriptions of limitation and medical reports) to determine what capacity the claimant has for work despite his or her impairment(s).  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ considers a claimant's ability to meet physical and mental demands, sensory requirements, and other functions.  *See* 20 C.F.R. §§ 404.1545(b-d), 416.945(b-d).  RFC is a function-by-function assessment of a claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  SSR 96-8p. Again, the court's review is limited, and the Commissioner's decision must be upheld if it is supported by enough "evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (defining "a mere scintilla" of evidence).  The court must uphold the Commissioner's interpretation if the evidence supports more than one interpretation.  *Burch v. Barnhart*, 400 F.3d at 679.

Plaintiff contends that the ALJ failed to properly evaluate the medical evidence in assessing her RFC because she has not had the capacity to engage in light work since the alleged onset date. (ECF No. 17, at 4-5).  Plaintiff highlights records showing her wearing a clam shell orthosis, using a walker, and presenting with a decreased range of motion on November 17, 2016.  (*Id.* at 5).  She argues that this decreased range of motion was also present in December of 2016 and included back pain, leg pain, low strength and flexibility, and a positive slump test.  (*Id.*).  Plaintiff continues by citing her antalgic, slow, and unsteady gait from March 2017 to March 2019 and points out abnormal neurodiagnostic tests in October 2017 and November 2018.  (*Id.*).  Finally, she asserts that she was prescribed hydrocodone and morphine to treat her pain, tenderness, weakness, and decreased sensation in March of 2019.  (*Id.*)

The Commissioner responds that the ALJ properly assessed Plaintiff's functional capacities by relying on the substantial medical evidence of: (1) largely normal diagnostic tests; (2) unremarkable clinical examination findings; and (3) improvement with treatment.  (ECF No. 22, at 7-8).  The Commissioner concedes that Plaintiff's diagnostic tests showed degenerative changes, mild stenosis, mild spinal foraminal and spinal cord narrowing, abnormal nerve conduction studies, and some abnormalities.  (*Id.* at 8-9).  However, the Commissioner contends that Plaintiff's diagnostic tests were otherwise normal, and devoid of evidence showing problems

sufficient to cause the severity of pain and limitations alleged by Plaintiff. (*Id.*). The Commissioner also notes that Plaintiff's clinical examination findings were mostly normal. (*Id.*) While some indicated limited range of motion, pain, and unsteady gait, others exhibited normal ranges of motion, the ability to stand and move without difficulty, and a normal gait. (*Id.* at 10-11). Finally, the Commissioner points out that Plaintiff's conservative treatment plan and reported activities—swimming, exercising, using a treadmill, and lifting furniture—indicate an overall positive response to treatment. (*Id.* at 12-13).

With respect to Plaintiff's diagnostic tests, other than two tests that Plaintiff points out were abnormal, Plaintiff has not pointed to any other diagnostic tests showing abnormalities consistent with her allegations of pain. And the Commissioner concedes that Plaintiff had these abnormal tests. Nonetheless, the Commissioner points out numerous tests from before and after Plaintiff's surgery showing largely normal results except for mild degenerative changes.

With respect to Plaintiff's clinical examination findings, Plaintiff relies heavily on her physical exam findings of pain, decreased range of motion, and slow gait to support her argument against the ALJ's RFC finding. However, some of Plaintiff's arguments are contradicted, even by her own cites to the record. The records showing her wearing a clam shell orthosis, using a walker, and presenting with a decreased range of motion on November 17, 2016 also state that "[o]verall some gains have been made, but expect much greater progress with consistent attendance." (AR 1191-92). The records depicting back and leg pain, decreased range of motion, strength, and flexibility, and a positive slump test on December 15, 2016 found Plaintiff's rehabilitation potential to be "good." (AR 863). Records showing Plaintiff's antalgic gait on March 28, 2017 also show that "[n]erve conduction studies and EMG studies were normal, with no evidence of radiculopathy or myopathy…She states that the pain in her back, central portion of the back and across her back has improved since surgery." (AR 1209-10). Plaintiff's argument that her gait was noted to be slow or unsteady on numerous occasions are contradicted by notes that she "ambulates with a slow and steady gait with a cane" on June 29, 2017 (AR 1658), and "ambulates with a steady gait" on March 2, 2018 (AR 1871-82). And although Plaintiff's March 2019 physical exam did show a painful gait, joint tenderness, leg weakness, and decreased sensation, her doctor instructed her to

increase her activity levels, noted that her chronic pain improved with increased activity, ordered her to exercise 10-15 minutes twice per day, and wrote that she has "benefited from improved functionality on [her] medications."  (AR 1663-64).

Finally, with respect to improvement with treatment, Plaintiff does not claim that she has not improved, other than pointing to her March 2019 checkup.  Without more, Plaintiff has not shown that the evidence of improvement upon which that the ALJ relied is insufficient for a reasonable mind to find adequate to support the ALJ's conclusion.  This is particularly true because the ALJ relied on Plaintiff's own reports of improvement and activity, which were inconsistent with her statements of disabling pain.

2.   The Court affirms the ALJ's decision to give Dr. Anuligo's opinion little weight.

The ALJ's decision to give Dr. Anuligo's opinion little weight was supported by substantial evidence.  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight…even if it does not meet the test for controlling weight.'"  *Id.*  To satisfy the "substantial evidence" requirement of the specific and legitimate reasons standard, the ALJ should set forth a "detailed and thorough summary of the facts and controlling clinical evidence, stat[e] his interpretation thereof, and mak[e] findings." *Id.*  The ALJ can never arbitrarily substitute his own opinion for the opinion of competent medical professionals. *Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).  An ALJ may properly reject "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Thomas*, 278 F.3d at 957.  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (internal citations omitted).

1    Here, the ALJ's decision to give Dr. Anuligo's assessment little weight is supported by

2    substantial evidence.  Plaintiff asserts that the ALJ improperly rejected Dr. Anuligo's assessment.

3    Dr. Anuligo opined that Plaintiff could stand/walk at least two hours in a workday, should alternate

4    between sitting and standing; must use a cane for all distances and terrain; could carry 10 pounds

5    maximum; and could occasionally climb, balance, stoop, kneel, crouch, and crawl.  (ECF No. 17,

6    at 5-6).  Plaintiff argues that the ALJ improperly relied on an emergency department physician who

7    released Plaintiff to work without restrictions because Dr. Anuligo's opinion is otherwise

8    uncontradicted and supported by evidence.  (*Id.*).

9    The Commissioner responds that the ALJ properly gave little weight to Dr. Anuligo's

10   opinion because it was not supported by the record.  (ECF No. 22, at 14).  The Commissioner argues

11   that Dr. Anuligo's opinion is inconsistent with Plaintiff's improvement with treatment, Plaintiff's

12   statements about exercising, cooking, moments of no pain, and performing self-care independently.

13   (*Id.* at 16).  Coupled with the emergency physician's work release form, the ALJ found Dr.

14   Anuligo's opinion inconsistent with the record.  (*Id.*).  The Commissioner also found Dr. Anuligo's

15   opinion inconsistent with its own findings that Plaintiff had full strength, a normal tandem walk,

16   and the ability to ambulate without difficulty.  (*Id.*)

17   The Court finds that the ALJ's rejection of Dr. Anuligo's opinion was supported by

18   substantial evidence.  In rejecting Dr. Anuligo's opinion, the ALJ noted that the opinion was not

19   supported by clinical findings and cited records that indicated Plaintiff's pain and functionality had

20   improved before and after the date of Dr. Anuligo's opinion on May 24, 2017.  On September 27,

21   2016, Plaintiff reported that she had significant improvements after surgery (AR 903).  In January

22   of 2017, Plaintiff was noted to be able to perform the activities of daily living (AR 1285).  On

23   March 7, 2017, Plaintiff reported using her treadmill (AR 1159).  On March 21, 2017, she reported

24   exercising five times a week (AR 1223).  On March 28, 2017, she reported that, although her leg

25   pain had not improved, her back pain had (AR 1209).  And on April 25, 2017, Plaintiff reported

26   swimming laps (AR 1239).  Plaintiff told her doctor that she could do housework, prepare food,

27   and do her own shopping with breaks and assistance in May of 2017 (AR 1340) and reported lifting

28

1    furniture on January 7, 2018 (AR 1460).  Based on these facts, the Court finds that the ALJ's

2    decision to give Dr. Anuligo's opinion little weight is supported by substantial evidence.

3            3.       The Court upholds the ALJ's decision to give Dr. Jurani's opinion little

4                     weight.

5            The ALJ's decision to give Dr. Jurani's opinion little weight is also supported by substantial

6    evidence.  For claims filed before March 27, 2017, "the opinion of a treating physician is given

7    greater weight than that of an examining physician, [and] the opinion of an examining physician is

8    entitled to greater weight than that of a nonexamining physician." *Garrison*, 759 F.3d at 1012.  The

9    findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as

10   other evidence in the record supports those findings.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th

11   Cir. 1996).  Generally, the more consistent a medical opinion is with the record as a whole, the

12   more weight the ALJ will give to that medical opinion.  20 C.F.R. § 404.1527(c)(4).

13           Here, Plaintiff contends that the ALJ erred by giving Dr. Jurani's opinions little weight

14   because, as Plaintiff asserts, the opinions were consistent with the evidence and would support a

15   disability finding.  (ECF No. 17, at 7).  The Commissioner points out, however, that Dr. Jurani did

16   not review the entire record, including items that indicated Plaintiff's improvement.  The

17   Commissioner also notes that the ALJ did not outright reject the opinion but gave it little weight

18   because it was inconsistent with the record.

19           The Court finds that the ALJ's decision to give Dr. Jurani's opinion less weight was

20   supported by substantial evidence.  Dr. Jurani was a nonexamining physician who reviewed an

21   incomplete record.  And Dr. Jurani's opinion that Plaintiff was limited to sedentary work is

22   inconsistent with Plaintiff's own statements of exercising, lifting furniture, and the improvement

23   of her ability to function.  Plaintiff also fails to sufficiently explain how Dr. Jurani's opinion was

24   consistent with the record, instead relying on conclusory statements.  The ALJ's decision to give

25   Dr. Jurani's report less weight is supported by substantial evidence.  The Court also finds that the

26   ALJ's RFC finding is supported by substantial evidence.

27

28

1

**B.      The Court finds that the ALJ's finding that Plaintiff's mental impairments were not "severe" is supported by substantial evidence.**

2

The ALJ's decision that Plaintiff's mental impairments were not "severe" is supported by

3

substantial evidence.  At step two of the sequential process, the ALJ must determine whether the

4

claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or

5

mental ability to do basic work activities.  20 C.F.R. § 404.1505; 416.920(c).  When a claimant

6

alleges a severe mental impairment, the ALJ must follow a two-step "special technique."  20 C.F.R.

7

§ 404.1520a(a).  First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and

8

laboratory findings to determine whether [he or she has] a medically determinable impairment."

9

20 C.F.R. §§ 404.1520a, 416.920a.  Second, the ALJ must evaluate the "degree of functional

10

limitation resulting from [the claimant's] impairments" in four broad areas of functioning:

11

(1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist,

12

or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  The degree of

13

limitation is measured as none, mild, moderate, marked, and extreme.  20 C.F.R. § 404.1520a(c)(4).

14

If the limitation is found to be "none" or "mild," the impairment is generally considered not to be

15

severe.  If the impairment is severe, the ALJ proceeds to determine whether the impairment meets

16

or is equivalent in severity to a listed mental disorder.  20 C.F.R. § 404.1520a(d)(2).  The obligation

17

to develop the record is "triggered only when there is ambiguous evidence or when the record is

18

inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453,

19

459-60 (9th Cir. 2001).

20

Here, the ALJ's decision that Plaintiff's mental impairment were not "severe" is supported

21

by substantial evidence.  Plaintiff contends the ALJ erred at step two by failing to identify her post-

22

traumatic stress disorder, borderline personality disorder, generalized anxiety disorder, and major

23

depressive disorder as severe impairments.  (ECF 17 at 8).  Plaintiff argues that the ALJ improperly

24

rejected the opinion of Dr. Kolter that Plaintiff's mental impairments were severe and substituted

25

his own lay medical opinion.  (*Id.* at 9).  Plaintiff asserts that this was improper because Dr. Kolter's

26

opinion was the only one regarding the severity of Plaintiff's impairment.  (*Id.*).  Finally, Plaintiff

27

28

1   argues that the ALJ should have further developed the record because he did not agree with Dr.

2   Kolter's opinion. (*Id.*).

3       The Commissioner responds with three arguments. (ECF No. 22, at 20). First, that Plaintiff

4   had no more than mild limitations in the four areas of mental functioning. (*Id.*)  Second, that the

5   ALJ appropriately gave little weight to Dr. Kolter's opinions. (*Id.* at 21).  Third, that the ALJ

6   properly developed the record. (*Id.* at 21-22).

7       With regard to the severity of Plaintiff's mental limitations, the ALJ noted that Plaintiff's

8   medical records indicated that her mental impairments—separately and in combination—are non-

9   severe. (AR 16).  Following the two-step "special technique," the ALJ first analyzed the Plaintiff's

10  signs, symptoms, and laboratory findings and found that the "record consistently shows normal

11  mental functioning," supported by numerous points in the record showing normal cognitive

12  functioning and normal mental status examinations (AR 16, 1159, 1169, 1865).  The ALJ then

13  addressed each of the four broad areas of mental functioning.  (AR 16).  First, the ALJ found that

14  Plaintiff's record demonstrated "understanding, remembering, or applying information" because

15  she scored highly on mental status examinations, displayed normal thought processes, and engaged

16  with questions.  (AR 17, 1865, 1139-43).  Second, the ALJ found that Plaintiff had no limitations

17  interacting with others because her providers frequently noted that she was well groomed and

18  engaging with normal speech.  (AR 17, 1169).  Third, the ALJ found that Plaintiff was capable of

19  "concentrating, persisting, and maintaining pace" because her mental status examinations showed

20  intact concentration and cognition.  (AR 17, 1148, 1154, 1160-61, 1653, 1770, 1773, 1776).

21  Finally, the ALJ found that Plaintiff was capable of managing herself because of her reports that

22  she could independently complete the activities of daily living.  (AR 17).  Plaintiff addresses none

23  of these items, instead arguing in conclusory fashion that the "record establishes that Ruditsky's

24  mental impairment satisfied the 'de minimis threshold.'"  (ECF No. 17, at 8).  Based on  the

25  evidence upon which the ALJ relied, the Court finds that the ALJ's decision that Plaintiff's mental

26  limitations were not severe were supported by substantial evidence.

27      With regard to Dr. Kolter's opinion, the ALJ noted that Dr. Kolter did not have the

28  opportunity to weigh the evidence showing Plaintiff's normal functioning submitted at the hearing

1   level.  Specifically, the ALJ noted that Dr. Kolter did not have an opportunity to review Plaintiff's

2   records showing: (1) that her mental status was intact and appropriate (AR 1148, 1154, 1160-61);

3   (2) she was well groomed with normal speech, coherent thought content, and good understanding

4   and judgment (AR 1169); (3) she was cooperative, had an appropriate affect, thought form,

5   reasoning, judgment, and normal insight  (AR 1653); and (4) that she described her mood as "ok,"

6   had organized thoughts, fair judgment,  generally appropriate behavior, normal orientation, logical

7   thinking, logical memory, general cognitive abilities, no signs of anxiety, and normal insight and

8   judgment.    (AR 1770, 1773, 1776).   Additionally, the ALJ pointed out that the opinion was

9   inconsistent with the record as a whole, which indicated that Plaintiff could function within normal

10  limits.  Plaintiff's argument that Dr. Kolter's opinion is the only one discussing the severity of

11  Plaintiff's mental impairment ignores other portions of the record that repeatedly note Plaintiff's

12  mental state as normal.  The  ALJ's decision to give Dr. Kolter's opinion little weight was thus

13  supported by substantial evidence.

14          Finally, Plaintiff's argument that the ALJ substituted his lay judgment for that of Dr.

15  Kolter's without further developing the record is unpersuasive.  To the contrary, the ALJ cited

16  specific portions of the record unambiguously indicating that Plaintiff's mental impairments were

17  not severe.  The record was neither ambiguous nor inadequate to trigger the ALJ's duty to develop

18  it.  The Court thus finds that the ALJ's determination that Plaintiff's mental impairments were not

19  "severe" was supported by substantial evidence.

20

21

22

23

24

25

26

27

28

1       Accordingly, **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand and/or

2   Reverse (ECF No. 17) is **denied**.

3       **IT IS FURTHER ORDERED** that the Commissioner's Countermotion to Affirm (ECF

4   No. 22) is **granted**.

5       **IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close

6   the case.

7       DATED: July 26, 2021

8   _____

9   DANIEL J. ALBREGTS
    UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28